IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**TINA BIANCHINI**                                                                  **PLAINTIFF**

**VS.**                                                **CIVIL ACTION NO. 3:16-cv-510 DPJ-FKB**

**CITY OF JACKSON, LEE VANCE,**
in his Individual Capacity, **TYREE JONES,**
in his Individual Capacity,
and **JOHN DOES 1-4**                                                          **DEFENDANTS**

<u>**SECOND AMENDED COMPLAINT**</u>
**(Jury Trial Demanded)**

Tina Bianchini, by and through her attorney of record, hereby files this Complaint against the Defendants, and in support thereof would show unto the Court, the following to-wit:

**I.       INTRODUCTION**

Tina Bianchini (hereinafter "Bianchini") files this lawsuit to redress the deprivation of her constitutional right to Equal Protection to be free from sexual harassment and sex and race discrimination under the Fourteenth Amendment to the United States Constitution. In addition, Bianchini asserts a claim for the deprivation of her First Amendment constitutional right to speak on a matter of public concern and to file domestic violence charges against Aaron Allen, an African-American police officer and a member of Mayor Tony Yarber's police detail.

## JURISDICTION AND VENUE

1. The defendants in this action deprived Bianchini of various constitutional rights including but not limited to the deprivation of her right to Equal Protection to be free from race and sex discrimination, sexual harassment and retaliation. This lawsuit is authorized and instituted pursuant to 42 U.S.C. § 1983 and the First, Fourth and Fourteenth Amendments of the United States. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1331. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. § 2202.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b). A substantial part of the events or omissions giving rise to these claims acts complained of by Bianchini occurred in the Southern District of Mississippi, Northern Division.

## PARTIES

3. Plaintiff Tina Bianchini is an adult resident citizen of Collin County, Texas. Tina Bianchini is a white female.

4. Defendant, City of Jackson, is a Mississippi municipality and may be served with process of this Court by serving a copy of the Summons and Complaint upon Mayor Tony Yarber.

5. Defendant, Lee Vance, is the police chief of the City of Jackson Police Department. Vance may be served with process of this Court by serving a copy of the Summons and Complaint upon him wherever he may be found. Vance is being sued in his individual capacity.

6. Defendant, Tyree Jones, is a Commander with the Jackson Police Department. Jones may be served with process of this Court by serving a copy of the Summons and Complaint upon him wherever he may be found. Jones is being sued in his individual capacity.

7. John Does 1-4 are individuals whose identities are unknown to the Plaintiffs at this time.

## STATEMENT OF FACTS

8. On March 26, 2015, Aaron Allen, a JPD officer and a member of Mayor Tony Yarber's detail, called Lt. Randy Avery and told him he had a "situation" at his residence. Shortly after Allen's call, Avery, who was on duty and acting under the color of state law, arrived at Allen's home. Sgt. Kenyatta Gowdy came a short time later. The officers interviewed Bianchini without giving her any *Garrity or Miranda* warnings. After the interview, JPD officers arrested Bianchini and charged her with domestic violence. Allen, an African-American male JPD officer and a member of Mayor Tony Yarber's detail, was not arrested. Like Allen, Gowdy and Avery are African-American males. At all times relevant herein, JPD had a policy or custom of allowing off-duty police officers to by-pass the 911 system when calling the police. In addition, at all times relevant herein, JPD had a policy or custom of protecting African-Americans officers facing domestic violence charges.

9. During the interview with the officers, Bianchini told the officers Allen was the aggressor and he injured her during the encounter. Bianchini was transported to St. Dominic Hospital where she was treated and released. JPD officers transported Bianchini to the JPD jail, where she was charged with domestic violence. Bond was set

at $700.00. After Bianchini's bond was posted, she was held in the jail until she was escorted to Vance's office. Vance, who is African-American, gave Bianchini an ultimatum: resign or be fired. Under duress, Bianchini signed the letter of resignation prepared by Vance. During the time when Vance demanded Bianchini resign or be fired for the domestic violence charge, Vance allowed non-white police officers to keep their positions as police officers while domestic violence charges were pending against them.

10. Upon her release from jail, Bianchini repeatedly went to JPD and attempted to file charges against Allen. Upon information and belief, JPD officers, acting pursuant to orders from Jones, refused to allow Bianchini to swear out an affidavit against Allen. At all times relevant herein, the defendants had a custom or policy of protecting high ranking JPD officers and JPD officers with connections to Mayor Tony Yarber.

11. At all times relevant herein, the defendants maintained a custom or policy of a code of silence and intimidation and retaliation. Officers in JPD were aware of high ranking JPD officers who were disciplined when caught having inappropriate relationship with female subordinates. Jones, also an African-American male, was known throughout the department for receiving promotions despite his habit of engaging in inappropriate relationships with female subordinates, who knew it would be futile to report Jones's sexual indiscretions to Vance. While Vance has allowed internal affairs to investigate other officers after receiving anonymous complaints, Vance did not ask internal affairs to conduct an investigation of Jones when he was shown a photograph of Jones's erect penis.

12. In March of 2015, Jones had been lying in wait for Bianchini because she told him his sexual advances were unwelcomed in December of 2014. Beginning in

4

December of 2014, Jones created a hostile work environment by repeatedly telling Bianchini that she should maintain a code of silence and should not report Jones for misconduct or tell anyone about Jones's misconduct. In or about December of 2014, Jones told Bianchini a JPD officer called him and mentioned her name. Jones told Bianchini if the other JPD officer got involved in his business she would take care of her. In addition, Jones warned Bianchini she would never work in his department if she revealed anything about his misconduct. At all times relevant herein, the defendants had a policy or custom of covering up misconduct of male police officers as well as a policy and custom of a code of silence, intimidation and retaliation against employees who complained of or reported misconduct of other officers.

11. Jones's attempt to shield Allen from arrest by refusing to allow Bianchini to file an affidavit against him is one of many ways high ranking JPD officers sought to shield African-American male officers who engaged in misconduct. While JPD refused to allow Bianchini to file an affidavit, a Hinds County Grand Jury indicted Allen for aggravated domestic violence. When Allen was indicted, Vance did not terminate him. Allen still is employed with JPD. Vance and the City of Jackson continued to employ African-American police officers, including but not limited to Allen, who were charged with domestic violence.

12. On January 25, 2016, the domestic violence charge lodged against Bianchini on March 26, 2015 was remanded to the file.

13. As a result of her wrongful termination from JPD, Bianchini also was terminated from her job as a security officer at an apartment complex in Jackson, Mississippi and relieved of her security guard duties at a local restaurant.

14. Before becoming a victim of race discrimination at JPD, Bianchini suffered sex discrimination and endured sexual harassment at the hands of Jones when he supervised her. While working as a commander and Bianchini's supervisor, Jones sent Bianchini explicit text messages and photographs of his exert penis and invited her to come to his office and home for sex. Jones also demanded sexual favors from Bianchini in exchange for the opportunity to earn extra money doing detail work for JPD. Jones also promised Bianchini he would assist her in joining the criminal investigations department, which he headed.

15. Upon information and belief, prior to becoming commander, Jones was disciplined for inappropriate relationships with other JPD officer(s). Upon information and belief, Jones was not the only high ranking JPD officer who was disciplined for inappropriate relationships with other JPD officers. Although Jones had been disciplined, that did not keep Vance from naming him as a commander.

16. At all times relevant herein, the defendants maintained a custom or policy of female employees refusing to file complaints about sexual misconduct of high ranking male police officers to protect their positions within JPD.

## CAUSE OF ACTIONS
## EQUAL PROTECTION

17. The Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full. At all times relevant herein, JPD officers were acting under the color of state law.

18. Plaintiff contends that she had a clearly established right under the Equal Protection clause to be free from race and sex discrimination and sexual harassment.

19. Upon information and belief, the City of Jackson and Vance, knew or should have known Bianchini had a clearly established right to Equal Protection and was entitled to be

treated like similarly situated African-American police officers charged with domestic violence.   In addition, the City of Jackson and Vance had constructive knowledge of the practice of high ranking JPD officers who used their positions to obtain sexual favors from female subordinates as well as the code of silence and intimidation that existed in JPD which silenced female JPD officers and prevented them from lodging formal complaints for sexually harassment.

20. As a proximate consequence of the actions of Defendants City of Jackson and Chief Vance, Bianchini was unlawfully terminated from her employment on account of her race, was treated different from men on account of her sex, and endured sexual harassment at the hands of her supervisor because of the custom or policy of a code of silence, intimidation and retaliation for those who reported misconduct by high ranking JPD officers.

## **RIGHT TO BE FREE FROM UNLAWFUL SEIZURE**

21. Plaintiff incorporates the allegations contained in paragraphs 1 through 20 above. At all times relevant herein, JPD officers were acting under the color of state law.

22. The Fourth Amendment to the United States Constitution guards against unreasonable search and seizure.   The seizure and arrest of Bianchini constituted an unreasonable seizure under the Fourth Amendment to the United States Constitution.

23. Defendants Vance and City of Jackson are liable for the wrongful seizure and incarceration of Bianchini because her arrest/seizure and detention were carried out pursuant to a policy or custom of the City of Jackson and JPD and said policy or custom was the moving force behind the constitutional violation.  The City of Jackson is liable

for the actions of its requisite policymakers who implemented the policies at issue and played a direct role in the seizure, arrest and detention of Bianchini.

24. As a proximate consequence of the actions of Defendants City of Jackson and Chief Vance, Bianchini was unlawfully seized in violation of her Fourth Amendment Right to be free from illegal search and seizure.

## MALICIOUS PROSECUTION

25. Plaintiff incorporates the allegations contained in paragraphs 1 through 24 above.

26. Plaintiff was falsely arrested and the charge of domestic violence subsequently was remanded.

27. As a proximate consequence of the actions of employees of the City of Jackson, Bianchini was maliciously prosecuted.

## DAMAGES

28. As a consequence of the foregoing misconduct of the Defendants, Bianchini sustained pain and suffering, physical injury, great mental distress, depression, insomnia, shock, fright and humiliation as a result of the violation of her constitutionally protected and other legal rights.

29. As a consequence of the foregoing misconduct of the Defendants, Bianchini has been damaged in an amount exceeding the jurisdictional requirements of this Court.

## RELIEF

30. Plaintiff requests that the Court issue the following relief:

   a. Award Bianchini equitable back pay, front pay, reinstatement, economic damages for her lost pay, together with compensatory and punitive damages; and

   b. Award Bianchini attorney fees, costs and expenses of litigation, and jury trial.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff Tina Bianchini demands judgment against the Defendants in an amount exceeding the jurisdictional requirements of this Court, all together with the costs and disbursement action, including attorneys' fees, plus interest, and for any other relief which this Court deems just and proper.

**RESPECTFULLY SUBMITTED** this, the  26th  day of January, 2017.

        **TINA BIANCHINI**

By: //s// Lisa M. Ross
     Lisa M. Ross (MSB # 9755)
     Post Office Box 11264
     Jackson, MS 39283-1264
     (601) 981-7900 (telephone)
     (601) 981-7917 (facsimile)

     //s// Carlos Tanner
     Carlos Tanner (MSB # 102713)
     Post Office Box 3709
     Jackson, MS 30207
     (601) 460-1745 (telephone)
     (601) 796-3509 (facsimile)

     Attorneys for Plaintiff