UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

TINA BIANCHINI                                                                                    PLAINTIFF

V.                                                                              NO. 3:16-CV-510-DPJ-FKB

CITY OF JACKSON, ET. AL                                                                DEFENDANTS

ORDER

This employment dispute is before the Court on Defendants' separately filed motions to dismiss Plaintiff's Second Amended Complaint ("SAC") [36, 38] and Plaintiff's Motion to Amend the SAC [50]. Having considered the parties' submissions, the Court finds that the City of Jackson's motion to dismiss should be granted; Defendant Lee Vance's motion to dismiss should be denied as to the equal-protection claim but otherwise granted; and Plaintiff's motion to amend should be denied.

I.  Background

Plaintiff Tina Bianchini is a white former police officer with the Jackson Police Department ("JPD"). On March 26, 2015, she was arrested and charged with domestic violence following an altercation with fellow officer Aaron Allen. *See* SAC [33] at 3. After being charged, Bianchini claims JPD Chief Lee Vance forced her to resign. She says that the decision was based on her race and sex, because Vance retained Allen, a similarly situated African-American male.

Aggrieved by the decision, Bianchini sued Vance and the City of Jackson on June 24, 2016. *Id.* In her first Complaint, Bianchini alleged two federal-law claims under 42 U.S.C. § 1983 based on alleged equal-protection and unlawful-seizure violations. Compl. [1-1] at 4–5. She also brought state-law claims for false arrest, false imprisonment, and malicious prosecution.

*Id.* at 5–6. The City of Jackson answered that Complaint on July 26, 2016 [3]. Since then, this case has had a hard time leaving the starting gates due to Bianchini's efforts to amend her complaint.

Bianchini first sought leave to amend on September 26, 2016. *See* Pl.'s Mot. [12]. That motion sought to add claims against Commander Tyree Jones regarding alleged sexual harassment and also attempted to add claims against the original defendants related to that conduct. Believing the motion was unopposed, the magistrate judge granted it in a text order the following day, clearing the way for Bianchini to file her Amended Complaint [13] on September 27, 2016. But apparently the parties were not fully in agreement, and on October 11, 2016, Defendants moved to strike [16] the Amended Complaint. They argued then—as they do now—that the Amended Complaint would be futile for lack of specific facts establishing supervisory or municipal liability. *See* Defs.' Mot. [16]. The magistrate judge initially struck the amended complaint to allow additional briefing, *see* Nov. 21, 2016 Order [27], but he eventually granted leave to amend, *see* Jan. 17, 2017 Order [31]. Although the magistrate judge acknowledged Defendants' futility argument, he concluded that "the best course of action" was to allow the amendment subject to future dispositive motions. Jan. 17, 2017 Order [31] at 2. Accordingly, Bianchini refiled the SAC [33] on January 26, 2017. In doing so, she added sexual-harassment claims against Jones.

After the SAC was filed, the parties participated in a February 16, 2017 case-management conference and agreed to certain deadlines. Most notably, the parties agreed to a March 20, 2017 deadline to amend the pleadings. *See* CMO [40]. Then, on February 20, 2017, before any responsive pleadings were filed, Defendants Vance and the City of Jackson both moved to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6). *See* Defs.' Mots.

2

[36, 38]. Bianchini responded to both motions [45, 46], and Defendants replied [48, 49]. But to further complicate matters, Bianchini filed a new motion [50] on April 13, 2017, seeking leave to amend the SAC. Defendants responded in opposition on April 27, 2017 [51], and Bianchini declined to reply.

II.    Analysis

    A.    Motions to Dismiss

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). To overcome a Rule 12(b)(6) motion, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citing *Twombly*, 550 U.S. at 556). It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (citing *Twombly*, 550 U.S. at 556). In this case, there is some overlap between the two Defendants' motions. Accordingly, this

portion of the Order will be organized by the claims reflected in the SAC.  Where it makes sense, the arguments as to the separate Defendants will be segregated.

        1.       Equal Protection

Bianchini claims that she was fired because she is a white woman, whereas the City and Defendant Vance protect African-American male officers.  The Equal Protection Clause "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  This constitutional protection "reaches only state actors, but § 1983 equal protection claims may be brought against individuals as well as municipalities."  *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009).  Here, Bianchini asserts her claim against the City and Vance.

"To state a claim of . . . discrimination under the Equal Protection Clause and section 1983, the plaintiff 'must allege and prove that [she] received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.'"  *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 227 (5th Cir. 2012) (quoting *Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004)).

        a.       Vance's Motion

Vance says that Bianchini fails to plead a plausible claim that he intended to discriminate based on race or sex and that he is therefore entitled to qualified immunity.  "The basic steps of [the] qualified-immunity inquiry are well-known:  a plaintiff seeking to defeat qualified immunity must show:  (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."  *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011).  Vance never takes his qualified-immunity arguments past the

first step, resting instead on the contention that the SAC fails in various ways to state plausible federal claims against him. Accordingly, this Order is limited to that same question.

As for the equal-protection claim, Vance relies heavily on *Yul Chu v. Mississippi State University*, where the Fifth Circuit affirmed dismissal of an equal-protection claim under Rule 12(b)(6). 592 F. App'x 260, 267 (5th Cir. 2014). There, the plaintiff "merely state[d] that the university discriminated against him and did not discriminate against white faculty, but he fail[ed] to elaborate." *Id.* Accordingly, "[t]here [were] no factual allegations to support that claim." *Id.* Not surprisingly, the court held that these conclusory allegations "failed to state an equal-protection claim upon which relief may be granted." *Id.*

But Bianchini does more. Granted, she makes some conclusory statements that Vance treated African-American men better. *See* SAC [33] at 4–5. But she backs that statement up with specific facts regarding a specific comparator, Allen, the African-American male officer with whom Bianchini had the disputed altercation. *Id.* at 3–4. In fact, Bianchini very plainly says in her SAC that (1) Allen was the aggressor, *id.* at 3; (2) he put her in the hospital, *id.*; (3) a grand jury indicted him on domestic-violence charges, *id.* at 5; and (4) the domestic-violence charges against Bianchini were remanded to the file, *id.* Yet Vance terminated her employment and not Allen's. *Id.*

Despite all this, Vance says the SAC "does not make one factual allegation that could be construed as demonstrating that Vance's decision to terminate Plaintiff's employment was motivated by racial or gender-based animus against white or female officers." Def.'s Mem. [39] at 7. But in the race- and sex-discrimination contexts, proof that similarly situated employees from different classes were treated more favorably provides circumstantial evidence of discriminatory intent. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973); *see*

*also Advanced Tech. Bldg. Sols., LLC v. City of Jackson, Miss.*, No. 3:12-CV-389-LG-JMR, 2014 WL 3783949, at *3–4 (S.D. Miss. July 31, 2014) (noting in equal-protection case that "[a] plaintiff may prove discriminatory intent through either direct evidence or circumstantial evidence" (citing *Gaalla v. Brown*, 460 F. App'x 469, 479 (5th Cir. 2012))).

As noted before, the standard under Rule 12(b)(6) "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d at 587 (citing *Twombly*, 550 U.S. at 556). Bianchini has sufficiently pleaded specific facts to state a plausible equal-protection claim against Vance.

### b. The City's Motion

The City echoes many of Vance's arguments, but it also contends that Bianchini has failed to plead a sufficient case of municipal liability. It is black-letter law that a municipality like the City of Jackson cannot be held vicariously responsible for the unconstitutional acts of its employees under *respondeat superior*. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). Instead, "municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001).

Citing this authority, the City says that Bianchini's SAC fatally fails to identify an official policy or custom. Def.'s Mem. [37] at 7. For her part, Bianchini essentially acknowledges that point but pivots to the single-incident exception. *See* Pl.'s Mem. [46] at 2 (citing *Knox v. City of Monroe*, No. 07-606, 2009 WL 57115, at *1 (W.D. La. Jan. 8, 2009)). "It is well-established that a single unconstitutional action by a municipal actor may give rise to

municipal liability if that actor is a final policymaker." *Bolton v. City of Dall., Tex.*, 541 F.3d 545, 548 (5th Cir. 2008); *see also Adv. Tech. Bldg. Sols., LLC*, 817 F.3d at 165 (noting "liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered").  So the question is whether the single-incident exception applies.

The problem for Bianchini is that she never explores this issue with any depth, and the arguments she does offer have been rejected in binding authority.  According to Bianchini, Vance "was the *decision maker* with regard to [her] termination," because "there was no grievance policy under which [she] could contest [Vance's] decision to terminate her."  Pl.'s Mem. [46] at 3 (emphasis added).  In other words, because there is no procedure for appeal, Vance is the final "*decision maker*," and his acts bind the City.  *Id.* (emphasis added).

Even assuming Vance is the final *decision-maker*, the argument confuses decisionmaking authority with final policymaking authority.  In *Bolton v. City of Dallas, Texas*, a former police chief was terminated by a city manager.  541 F.3d at 546.  Because the manager could terminate employment without direct oversight, the terminated police chief claimed that the manager was a policymaker.  *Id.* at 547.  The Fifth Circuit affirmed summary judgment, explaining that there exists a "difference between final decisionmaking authority and final policymaking authority." *Id.* at 548 (citing *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993)).  Put simply, "discretion to exercise a particular function does not necessarily entail final policymaking authority over that function."  *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988)).

Significantly, the *Bolton* opinion rejects Bianchini's sole argument for municipal liability—that no JPD or City policy allowed review of Vance's decision.  *See* Pl.'s Mem. [46] at

7

3. According to the Fifth Circuit, neither *Pembaurv. City of Cincinnati* nor *City of St. Louis v. Praprotnik* "made a 'suggestion of any qualification such as "initial" discretion or the decisionmaker's action being subject to appeal or the like.'" *Id.* at 549 (quoting *Jett*, 7 F.3d at 1247–48). As such, the Fifth Circuit has "eschew[ed] the importance of administrative reviewability in distinguishing final decisionmaking authority from final policymaking authority." *Id.* (quoting *Gelin v. Hous. Auth. of New Orleans*, 456 F.3d 525, 530 (5th Cir. 2006)). Accordingly, the Court finds that the City's motion to dismiss the equal-protection claim should be granted.

2.  Sexual Harassment

In her SAC, Bianchini also says she "endured sexual harassment at the hands of Jones when he supervised her." SAC [33] at 6. There is no dispute that sexual harassment violates the Equal Protection Clause of the United States Constitution. *Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007). But the issue is whether Vance or the City of Jackson can be held liable for Jones's alleged conduct. They say no.

a.  Vance's Motion

Though Bianchini says Jones harassed her, she nevertheless brings an individual-capacity claim against Vance based on Jones's alleged conduct. As the parties recognize, Vance "cannot be held liable under section 1983 for the actions of subordinates, like [Jones,] on any theory of vicarious or *respondeat superior* liability." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (citations omitted).

That said, "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."

8

*Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (citation and quotation marks omitted). "Under this analysis, customs or widespread practices are akin to official policies." *Estate of Henson v. Callahan*, 440 F. App'x 352, 356 (5th Cir. 2011) (citation omitted). To show "supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009) (internal quotation marks and citation omitted, alterations in original). According to Vance, Bianchini has failed to plead specific facts stating a plausible claim against him for Jones's conduct.

Bianchini begins her response by saying that she has "identified an official policy or custom that violated her right to [be] free from sexual harassment." Pl.'s Resp. [45] at 8. As support, she quotes the following averments from the SAC:

> [T]he defendants had a policy or custom of covering up misconduct of male police officers as well as a policy and custom of a code of silence, intimidation and retaliation against employees who complained of or reported misconduct of other officers.

SAC [33] at 5.

> Jones, also an African-American male, was known throughout the department for receiving promotions despite his habit of engaging in inappropriate relationships with female subordinates, who knew it would be futile to report Jones's sexual indiscretions to Vance.

*Id*. at 4.

> [D]efendants maintained a custom or policy of female employees refusing to file complaints about sexual misconduct of high ranking male police officers to protect their positions within JPD.

*Id*. at 6; *see* Pl.'s Resp. [45] at 8–9.

When considering these averments, the Court starts by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*,

9

556 U.S. at 679 (2009).  For example, in *Bell Atlantic Corp. v. Iqbal*, the Supreme Court disregarded the following averment as conclusory:  "[P]etitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest.'"  *Id.* at 680.  Bianchini's attempts to link Vance to Jones's conduct are no better.  "[T]he allegations of a policy or custom and its relationship to the constitutional violation cannot be conclusory but must contain *specific facts*."  *Von Eschen v. League City Tex.*, No. 00-20059, 2000 WL 1468838, at *1 (5th Cir. 2000) (emphasis added) (citing *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (holding that conclusory descriptions of policy or custom are insufficient)).  Here, the averments are insufficient to find a plausible claim that Vance himself—acting with deliberate indifference—adopted an official policy or widespread custom allowing sexual harassment.

Bianchini seems to recognize this deficiency, and other than quoting the above-referenced passages, she never offers a legal argument that the passages are sufficient.  Instead, she says Vance "recognizes that he can be liable if his behavior created a hostile or abusive working environment," so she seeks permission to amend the SAC to allege a failure-to-train claim.  Pl.'s Resp. [45] at 9–10.  On this record, the Court finds that the sexual-harassment claim was not sufficiently pleaded and should be dismissed.

      b.  The City's Motion

The City also seeks dismissal of the sexual-harassment claim, based on some of the same arguments addressed above.  The results are the same.  In addition, the City says the SAC fails to plead any facts that would establish any of the elements for municipal liability.  *See Piotrowski*, 237 F.3d at 578.  Rather than address this independent basis for the City's motion, Bianchini

merely states the legal standards for sexual-harassment claims under Title VII and § 1983. *See* Pl.'s Resp. [46] at 3–5. What she says is not necessarily wrong; she might have had a valid Title VII case against the City. But as stated before, there is no *respondeat superior* liability under § 1983. And Bianchini never explains how the SAC establishes a valid claim of municipal liability for Jones's alleged harassment. This claim is therefore dismissed.

### 3. Fourth Amendment Unlawful Seizure

The Fourth Amendment to the United States Constitution provides protection from unlawful seizures. To prevail on such a claim under § 1983, Bianchini must show that she was arrested without probable cause. *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004). But as addressed above, she has additional hurdles to clear before she can hold Vance or the City responsible for an allegedly improper seizure. As to Vance, there is nothing in the SAC suggesting that he participated in the arrest. And there are no averments that would survive Rule 12(b)(6) based on supervisory liability. *See Monell*, 436 U.S. at 691. Regarding the City, Bianchini offers no substantive response, stating instead that she would like to amend her SAC. The motions are therefore granted.

### 4. First Amendment

Bianchini says that she was deprived of her First Amendment right to file domestic-violence charges against Allen. *See* SAC [33] at 1. Later in the SAC, she explains that "JPD officers, acting pursuant to orders *from Jones*, refused to allow Bianchini to swear out an affidavit against Allen." *Id.* at 4 (emphasis added). Assuming she has sufficiently alleged protected speech—as she addresses at length in her responses—Bianchini never counters Defendants' arguments that she failed to sufficiently plead supervisory or municipal liability. Again, nothing in her SAC links Jones's alleged interference to Vance or otherwise establishes a

basis for supervisory liability. Likewise, municipal liability has been insufficiently pleaded as to the City. *See Piotrowski*, 237 F.3d at 578 (holding that plaintiff must show "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom"). These claims are dismissed.

    5.  Malicious Prosecution

Bianchini never responds to this portion of Defendants' motions, which otherwise appear meritorious. The motions are therefore granted.

  B. Plaintiff's Motion for Leave to Amend the SAC

Bianchini files her motion to amend under Federal Rule of Civil Procedure 15(a)(2). But as Defendants correctly note, Bianchini filed her motion after the CMO deadline for amendments. Rule 16(b) provides that scheduling orders, such as the CMO's now-expired amendment deadline, "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b). If a party shows good cause under Rule 16(b), the Court will grant amendment upon proper motion where justice so requires under Rule 15(a). *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 237 (5th Cir. 2015).

"The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)). Whether good cause exists is determined based on four factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such

prejudice." *E.E.O.C. v. Serv. Temps Inc.*, 679 F.3d 323, 334 (5th Cir. 2012) (internal quotation marks omitted) (quoting *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008)).

In this case, Bianchini should have known the good-cause standard would apply because Defendants cited it in their Rule 12(b)(6) replies *before* Bianchini moved for leave to amend. *See* Vance Reply [48] at 2; City Reply [49] at 2. Yet Bianchini ignored this standard when she moved for leave to file a third amended complaint—a motion she filed without a supporting memorandum as required by Local Rule 7(b)(4). She then declined to reply when Defendants filed their joint memorandum [51] explaining why the good-cause factors weigh against her motion.

Bianchini does cite *Harbin v. Washington* in her motion for the proposition that leave to amend should be granted when a defendant invokes qualified immunity. No. 3:95-CV-84-BA, 1996 WL 33370663 (N.D. Miss. Mar. 14, 1996), *aff'd*, 96 F.3d 1442 (5th Cir. 1996). In that case, the plaintiff was given one opportunity to amend his deficient complaint. But Bianchini has not shown that the claims she wishes to add could not have been asserted had she acted with diligence. *S&W Enters., L.L.C.*, 315 F.3d at 535. In fact, many of the purported claims relate to failure-to-train allegations against Vance, facts that a former JPD officer like Bianchini should have known.

Bianchini has had several opportunities to get this right, and even considering the proposed Third Amended Complaint, the Court anticipates further futility motions. As it stands, this case has been stuck at the pleading stage for one year, and it is time to move on. On this record, the Court finds no good cause and therefore denies the motion to amend.

III.     Conclusion

The Court has considered all arguments raised by the parties; those not addressed in this Order would not have changed the outcome.  For the reasons given, the Court grants the City of Jackson's Motion to Dismiss [36].  Defendant Vance's Motion to Dismiss [38] is denied as to the equal-protection claim but is otherwise granted.  Plaintiff's motion to amend [50] is denied.

**SO ORDERED AND ADJUDGED** this the 4th day of August, 2017.

                                          s/ *Daniel P. Jordan III*
                                          UNITED STATES DISTRICT JUDGE